NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| EDWIN LOPEZ and MERCEDES LOPEZ, | : | |
| Plaintiffs, | : : | Civ. Action No. 16-2956-BRM-DEA |
| v. | : : | |
| MONMOUTH COUNTY SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, et al., | : : : | **OPINION** |
| Defendants. | : : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are the following motions: (1) Defendants Monmouth County Society for the Prevention of Cruelty to Animals ("MCSPCA") and Matthew Giuliano's ("Giuliano") (collectively, "Monmouth Defendants") Motion to Dismiss (ECF No. 17), pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Defendant Victor Amato's ("Amato") Motion to Dismiss (ECF No. 20), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiffs Edwin Lopez and Mercedes Lopez (collectively, "Plaintiffs") oppose both Motions. (ECF No. 21.) Pursuant to Federal Rule of Civil Procedure 78(b), this Court did not hear oral argument. For the reasons set forth herein, the Motions to Dismiss are **GRANTED**.

---

[1] On March 16, 2017, this Court granted motions to dismiss in a case in which Plaintiffs Edwin and Mercedes Lopez brought claims stemming from a different dispute against several defendants, including Monmouth Defendants and Amato. *Lopez v. DiDonato*, 16-cv-02939 (D.N.J. Mar. 16, 2017) Slip Op.

## I. BACKGROUND

For the purposes of these Motions to Dismiss, the Court accepts the factual allegations in the Amended Complaint (ECF No. 14) as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Mercedes Lopez is a volunteer at the animal rescue agency Perth Amboy Happy Homes Shelter ("Happy Homes"). (ECF No. 14 at ¶ 1.) As part of her volunteer work, she temporarily houses and cares for abandoned animals in the home she shares with her husband, Edwin Lopez, in Howell, New Jersey. (*Id.* at ¶ 2.) When fostering animals, Mercedes Lopez consults with veterinarians and provides medical care as needed to the animals with the goal that they be adopted. (*Id.* at ¶ 3.) Mercedes Lopez participated in adoption events at PetSmart retail locations, on behalf of Happy Homes, at which the animals she fostered were offered for adoption. (*Id.* at ¶¶ 5-6.)

On or around November 12, 2011, Mercedes Lopez conducted an adoption event at the PetSmart in Manalapan, New Jersey. (*Id.* at ¶¶ 9-35.) A veterinarian cleared all of the dogs offered for adoption before the event. (*Id.* at ¶ 9.) Among the approximately ten (10) dogs adopted at the event was a dog named Nugget. (*Id.* at ¶¶ 8, 10.) After the event, Nugget exhibited symptoms of Parvovirus and was euthanized. (*Id.* at ¶ 11.) Nugget's owners contacted the MCSPCA and spoke to Giuliano, who was an officer of the MCSPCA, Law Enforcement Division. (*Id.* at ¶¶ 12-13.) Amato was the chief of the MCSPCA at all times relevant to this case and was Giuliano's superior. (*Id.* at ¶¶ 11, 31.)

Giuliano began an investigation and contacted everyone who adopted pets at the adoption event. (*Id.* at ¶¶ 15-16.) Giuliano learned four (4) other dogs adopted at the event became ill but

fully recovered. (*Id.* at ¶ 17.) Following his investigation, Giuliano issued five (5) summonses[2] to Mercedes Lopez for depriving an animal of sustenance in violation of N.J.S.A. 4:22-17(a)(1) and selling an animal with a contagious disease in violation of N.J.S.A. 4:22-26(l). (*Id.* at ¶ 19); *State v. Lopez*, No. A-1142-13T1, 2014 WL 8086429, at *1 (N.J. Super. Ct. App. Div. Mar. 9, 2015). Mercedes Lopez and Giuliano agreed to a plea bargain, which was ultimately withdrawn. (*Id.* at ¶¶ 20-23.) Plaintiffs assert Mercedes Lopez agreed to the plea bargain in reliance on Giuliano's false statements that she could retain her license as an animal control officer despite the guilty plea. (*Id.* at ¶ 21.) Upon learning she would lose her license due to the guilty plea, Mercedes Lopez sought and received the court's permission to withdraw her plea and proceed to trial. (*Id.* at ¶¶ 22-23.)

Three (3) of the charges were dismissed at trial, Mercedes Lopez was found not guilty of selling an animal with contagious disease after a trial de novo in Monmouth County Superior Court, and she was found guilty of depriving an animal of sustenance. (*Id.* at ¶¶ 24-25.) Mercedes Lopez appealed the guilty verdict to the Appellate Division, which reversed the verdict and remanded the matter to Superior Court for dismissal of the charge. (*Id.* at ¶¶ 26-27.) Plaintiffs contend Giuliano's investigation was a "fishing expedition" aimed at "soliciting complaints against [Mercedes Lopez]." (*Id.* at ¶ 30.) Plaintiffs further contend Giuliano bore personal animosity for Mercedes Lopez rooted in several years of disputes between the two over Giuliano's investigations of Happy Homes. (*Id.* at ¶¶ 45-52.)

Plaintiffs allege Giuliano and Amato violated her civil rights by treating her differently during their investigation because she is a Hispanic woman. (*Id.* at ¶¶ 36, 40, and Count Six.)

---

[2] Monmouth Defendants contend Giuliano issued six (6) summonses, not five (5). (ECF No. 17 at 8.) However, the discrepancy is immaterial to these Motions.

3

According to Plaintiffs, "newspaper articles published in March 2015" revealed "Amato was accused of publishing via Twitter and text message, various racist and sexist message [sic] to his employees . . . ." (*Id.* at ¶ 33.) Plaintiffs assert, prior to March 2015, they "had no reason to have knowledge of" Amato's allegedly racist and sexist biases. (*Id.* at ¶ 35.)

Plaintiffs also contend at some time between November 20, 2014, and November 20, 2015, Amato and/or Giuliano told Mercedes Lopez's associates she was an animal abuser and encouraged the associates to withhold donations of food from her. (*Id.* at ¶¶ 41, 43.) Plaintiffs claim these defamatory comments caused Mercedes Lopez to suffer emotional and financial damages, as well as harm to her reputation. (*Id.* at ¶ 44.) Plaintiffs maintain Giuliano's investigation and the related incidents have caused "tremendous strain" on their marriage and led Edwin Lopez to "suffer[] the loss of the comfort, companionship and services of [Mercedes] Lopez . . . ." (*Id.* at ¶¶ 54-55 and Count Seven.)

Plaintiffs commenced this action on November 23, 2015, in the Superior Court of New Jersey, Law Division, Monmouth County. (ECF No. 1-1.) On May 24, 2016, the case was removed to this Court by Monmouth Defendants. (ECF No. 1.) On June 17, 2016, Monmouth Defendants moved to dismiss the claims against them, pursuant to Rule 12(b)(6) (ECF No. 11), and on June 25, 2016, Amato did the same. (ECF No. 13.)

Rather than oppose the pending Motions to Dismiss, on July 18, 2016, Plaintiffs filed an Amended Complaint asserting the following claims against Defendants: (1) claims by Mercedes Lopez against the Monmouth Defendants and Amato for selective enforcement of the law (Count One); (2) claims by Mercedes Lopez against the Monmouth Defendants and Amato for slander and defamation (Count Two); (3) claims by Mercedes Lopez against Monmouth Defendants and Amato for selective enforcement of the law (Count Three); (4) claims by Mercedes Lopez against

Monmouth Defendants and Amato for malicious prosecution (Count Four); (5) claims by Mercedes Lopez against Giuliano for "falsely certifying to summonses" (Count Five);[3] (6) claims by Mercedes Lopez against Monmouth Defendants and Amato for selective enforcement of the law (Count Six); and (7) claims by Plaintiffs against all Defendants for wrongful and negligent acts, resulting in Plaintiffs' loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship (Count Seven). On August 1, 2016, Monmouth Defendants filed their Motion to Dismiss the Amended Complaint, and on August 10, 2016, Amato did the same.

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[3] The Court will analyze the claim for falsely certifying to summonses as a claim for selective enforcement of the law or, alternatively, as a claim for malicious prosecution.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III. DECISION**

**A. Selective Enforcement Claims (Counts One, Three, Five, and Six)**

Monmouth Defendants and Amato both argue several of the claims against them should be dismissed, because, among other reasons, they are barred by the relevant statutes of limitations. Typically, "the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In the Third Circuit, however, a defendant may succeed on a motion to dismiss on the basis of statute of limitations, "if the time alleged in the statement

of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)).

Plaintiffs bring claims against Monmouth Defendants and Amato under 42 U.S.C. § 1983 for alleged violations of their rights under the United States Constitution (Count One and Counts Three to Six). Because there is no federal statute of limitations for § 1983, courts must apply the most appropriate or analogous state statute of limitations. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A § 1983 claim is governed by the applicable state's statute of limitations for personal injury claims. *Id.* In New Jersey, personal injury claims are subject to a two-year statute of limitations. N.J.S.A. 2A:14-2(a); *Dique*, 603 F.3d at 185. Indeed, the parties agree the relevant statutes of limitations as to Plaintiffs' § 1983 claims is two years. Since Plaintiffs filed their Complaint on November 23, 2015, if any of their claims accrued prior to November 23, 2013, they will be barred by the two-year statute of limitations for personal injury claims.

Federal law governs a federal cause of action's accrual date. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a claim accrues when the facts which support the claim reasonably should have become known to the plaintiff. *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (quoting *Mathews v. Kidder Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)); *see also Large v. Cty. of Montgomery*, 307 F. App'x 606, 606 (3d Cir. 2009). "The determination of the time at which a claim accrues is an objective inquiry; [courts] ask not what the plaintiff actually knew but what a reasonable person should have known." *Kach*, 589 F.3d at 634. Importantly, accrual is not tied to whether the potential claimant knew or should have known that the injury constitutes a legal wrong. *Giles v. City of Phila.*, 542 F. App'x 121, 123 (3d Cir. 2013) (citing *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982)). Rather, "a cause of action accrues when the fact of injury and

7

its connection to the defendant would be recognized by a reasonable person." *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 484 (W.D. Pa. 2011) *aff'd*, 504 F. App'x 182 (3d Cir. 2012). Accordingly, "[a]s a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634.

Here, under the facts alleged, Plaintiffs' § 1983 claims against Monmouth Defendants and Amato for selective enforcement of the law accrued more than two (2) years before Plaintiffs filed the Complaint. While the Amended Complaint does not allege the date Giuliano issued the summonses, which concluded his investigation, Mercedes Lopez's trial ended on May 20, 2013, "[a]fter several days of trial over several months . . . ." *Lopez*, 2015 N.J. Super. Unpub. LEXIS 481, at *1. It follows, then, Giuliano issued the summonses months before November 23, 2013, the date by which any claims would be untimely in the November 23, 2015 Complaint.

Plaintiffs argue under the discovery rule their selective enforcement claims did not accrue upon issuance of the summonses, because the summonses alone did not put them on notice of the violation. (ECF No. 21-1 at 9-10.) Rather, Plaintiffs contend their claims arose in March 2015, when they read news reports of Amato's allegedly racist and sexist views, which put them on notice of their claims.

Plaintiffs rely on *Dique*, which held a "selective-enforcement claim will [typically] accrue at the time that the wrongful act resulting in damages occurs," but under certain circumstances a plaintiff may be reasonably unaware that he has been subject to selective enforcement, and therefore injured. *Dique*, 603 F.3d at 188. In such circumstances, the selective enforcement claim does not accrue until the plaintiff becomes aware that he has been the victim of selective enforcement. *Id.* Plaintiffs argue:

> [Mercedes Lopez] was unaware that she was the subject to selective prosecution until approximately March 2015. On that date it was

8

> made public that Defendant Victor Amato was the subject of litigation which alleged that he had maintained a long-standing pattern of racist and sexist behavior. . . . Plaintiff Mercedes Lopez could not reasonably have known that Amato had acted in a racist and sexist manner until that fact was disclosed to the public in March 2015.

(ECF No. 22-1 at 10 (citing *Dique*, 603 F.3d at 181).)

However, Plaintiffs' reliance on *Dique* is misplaced. In *Dique*, the Third Circuit found the plaintiff was "reasonably unaware of his injury because [the arresting officer] purported to stop his car for a speeding violation." *Dique*, 603 F.3d at 188. Accordingly, the *Dique* plaintiff's selective-enforcement claim did not accrue, under the discovery rule, until "his attorney became aware of the extensive documents describing the State's pervasive selective-enforcement practices," including performing traffic stops on the basis of racial profiling. *Id*. Conversely, here, under the facts pled, Plaintiffs reasonably should have been aware of their injuries at the time they occurred, before May 20, 2013.

Plaintiffs assert throughout the Amended Complaint the charges underlying Giuliano's summonses were patently false and that he investigated Mercedes Lopez, in part, because of his personal animosity for her. (ECF No. 14 at ¶¶ 29, 45-52.) Indeed, Plaintiffs affirmatively assert "Giuliano and Amato and the MSPCA [sic] knew or should have known that their actions exceeded the limits of their duties and were overreaching, abusive and unsupported by evidence" (*id.* at Count Four), and "Giuliano knew that the Plaintiff had obtained proper veterinary approvals prior to conducting the adoption at the . . . adoption event but issued the summonses anyway" (*id.* at Count Five). Consequently, unlike the plaintiff in *Dique*, Plaintiffs in this case were never under the misapprehension that Giuliano, Amato, or the MCSPCA had any basis to issue summonses to Mercedes Lopez for any mistreatment of animals. *See Love v. N.J. State Police*, Civ. No. 14-1313 (FLW)(TJB), 2016 U.S. Dist. LEXIS 69562, at *37 (D.N.J. May 26, 2016) (finding plaintiffs

9

should reasonably have discovered their selective enforcement injuries at the time of arrest and search, because plaintiffs were allegedly arrested for "no apparent reason" and defendants purportedly falsely claimed to have discovered controlled substances in their search of plaintiffs' persons and car). Therefore, at the time of the allegedly unreasonable investigation and issuance of summonses, regardless of whether Plaintiffs were aware of Amato's purported biases against women and minorities, Plaintiffs should have reasonably known they were the victims of selective enforcement at the hands of Giuliano and Amato.

For these reasons, Plaintiffs' selective enforcement claims against Monmouth Defendants and Amato (Counts One, Three, and Six) accrued when the summonses were received by Plaintiffs, before November 23, 2013, and are barred by statute of limitations. To the extent Plaintiffs' claim for falsely certifying to summonses (Count Five) is a claim for selective enforcement, it, too, is barred by the statute of limitations.

### B. Malicious Prosecution Claims (Counts Four and Five)

A plaintiff asserting a § 1983 claim for malicious prosecution must allege the following elements:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Here, Plaintiffs pled: (1) Defendants investigated Mercedes Lopez and issued her summonses stemming from the adoption event (ECF No. 14 at ¶¶ 15-19); (2) the proceeding ended in Mercedes Lopez's favor, as "[she] was exonerated on all charges issued by Giuliano" (*id.* at ¶ 28); (3) Defendants lacked probable cause for the investigation (*id.* at ¶¶ 29-30); and (4) Giuliano and Amato acted due to their personal animosity

10

toward Mercedes Lopez and/or due to her ethnicity and gender (*id.* at ¶¶ 33-36, 45-52). Plaintiffs do not allege adequately, however, that Mercedes Lopez suffered any deprivation of liberty as a result of Defendants' actions.

Plaintiffs assert in their opposition Motions, "[Mercedes] Lopez did suffer a seizure in the form of the loss of her licensing credentials." (ECF No. 21-1 at 13.) Plaintiffs refer to the loss of Mercedes Lopez's animal control license during an unspecified period of time in between her guilty plea and later withdrawal of the plea, which Plaintiffs recount in their Amended Complaint. (ECF No. 14 ¶¶ 20-23.) These facts do not constitute a deprivation of liberty.

In the Third Circuit, a deprivation of liberty in the context of a malicious prosecution claim occurs when the restrictions placed on the plaintiff are "consistent with the concept of seizure as a consequence of a legal proceeding." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). To determine whether such a seizure has occurred, courts look to whether "the state [has] place[d] constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding." *Schneyder v. Smith*, 653 F.3d 313, 321-22 (3d Cir. 2011). Thus, in the context of a malicious prosecution claim, "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," while "merely attending trial does not amount to a seizure for Fourth Amendment purposes." *Black v. Montgomery Cty.*, 835 F.3d 358, 367 (3d Cir. 2016).

Here, Plaintiffs do not allege they were subject to any pretrial custody or non-custodial restrictions. Instead, Plaintiffs assert the seizure of Mercedes Lopez's license after she pled guilty constituted a deprivation of her liberty within the meaning of the Fourth Amendment. (ECF 22-1 at 13-14.) However, the seizure of Mercedes Lopez's animal control license did not in any way restrict Plaintiffs' freedom of movement. A restriction on one's professional duties does not

constitute a deprivation of liberty in the context of a malicious prosecution claim. *Lear v Zanic*, 524 Fed. App'x 797, 799 (3d Cir. 2013) (finding a police officer did not suffer a deprivation of liberty when placed on "restricted duty" that prevented him from wearing a uniform, retaining his weapon, or earning overtime). Accordingly, this alleged seizure does not constitute a deprivation of Plaintiffs' liberty within the context of a malicious prosecution claim. Therefore, the malicious prosecution claims against Monmouth Defendants and Amato (Counts Four and Five) are dismissed.

### C. Defamation and Slander (Count Two) and Loss of Consortium Claims (Count Seven)

As to Plaintiffs' claims for defamation and slander and loss of consortium against Monmouth Defendants and Amato, this Court declines to exercise supplemental jurisdiction over these state law claims. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Del. County, Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, because Plaintiffs' claims for defamation and slander, and loss of consortium are based purely on state law, they are not claims over which the Court has original jurisdiction. Therefore,

at this early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against Defendants.

## IV. CONCLUSION

For the reasons set forth above, Monmouth Defendants' Motion to Dismiss (ECF No. 17) and Amato's Motion to Dismiss (ECF No. 20) are **GRANTED**. Plaintiffs' claims against Monmouth Defendants and Amato are **DISMISSED WITHOUT PREJUDICE**. An appropriate Order will follow.

**Date: April 26, 2017**  /s/ *Brian R. Martinotti*
                          **HON. BRIAN R. MARTINOTTI**
                          **UNITED STATES DISTRICT JUDGE**